Judith GURMANKIN, on behalf of herself and all other persons similarly situated

v.

Matthew COSTANZO, Superintendent of the School District of Philadelphia, et al.

Appeal of SCHOOL DISTRICT OF PHILADELPHIA and Matthew W. Costanzo, in No. 76–1730.

Appeal of Judith GURMANKIN, in No. 76–2297.

School District of Philadelphia and Michael Marcase, Appellants in No. 77–1273.

Nos. 76–1730, 76–2297 and 77–1273.

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1977.

Decided April 25, 1977.

Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for Judith Gurmankin, et al.

Roberta L. Griffin Mason, Asst. Counsel, School Dist. of Philadelphia, Philadelphia, Pa., for School Dist. of Philadelphia and Matthew W. Costanzo.

Robert L. Burgdorf, Jr., David M. Simonson, Marcia Pearce Burgdorf, Baltimore, Md., for amici curiae.

Before FORMAN, GIBBONS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In these appeals we review two injunctive orders entered by the district court in an action charging that the defendants, officials of the Philadelphia School District, discriminated against the plaintiff, Judith Gurmankin, because she is a blind person.[1] Ms. Gurmankin is an English teacher. She holds a Professional Certificate from the Pennsylvania Department of Education as a teacher of Comprehensive English in Pennsylvania Public Schools. In 1969 she attempted to obtain employment in the Phila-

delphia School District. At that time the District's medical and personnel policy excluded blind teachers from teaching sighted students in the public schools. Applicants who were certified as having a "chronic or acute physical defect," including blindness, were prevented from taking the Philadelphia Teachers Examination. Ms. Gurmankin was examined by the District's Director of Medical Services, and rejected for any position teaching sighted students because of her blindness. Ms. Gurmankin persisted in her attempts to take the examination and with the assistance of counsel at Community Legal Services, Inc., in the spring of 1974 she was admitted, and passed.

When her name was reached on the eligibility list the District offered her several positions, none of which she accepted, because they were not accompanied by an agreement that she would be afforded seniority as of the time she should properly have been admitted to the examination. Ms. Gurmankin filed this suit in November 1974, and on March 31, 1976 the district court ruled in her favor. The court ordered defendants to offer her employment

as a secondary school English teacher, with seniority rights and all other rights accruing to a secondary school English teacher commencing employment in September, 1970. Specifically, the plaintiff is to have the same rights under the School District's teacher transfer policy as a teacher who commenced employment in September, 1970.

The effect of this injunction was to require her employment, with a September 1970 seniority date. The court reserved decision on class aspects of the litigation and on back pay and attorney's fees.

Both the defendants and Ms. Gurmankin appealed from the injunction. The defendants contend that no order should have been entered. Ms. Gurmankin contends that the court fixed a seniority date later than that to which she was entitled. The

1. The district court opinion is reported. *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa. 1976).

defendants attempted unsuccessfully to obtain a stay pending appeal.

Despite the absence of a stay, ten months after the injunction issued Ms. Gurmankin still was not employed by the District as an English teacher. Several offers of employment had been made to her, but she rejected them as not reflecting the seniority awarded her by the court. In January, 1977, she filed a motion to amend the injunction. She contended that the District had offered her only the least attractive schools in the system, while teachers with less seniority were placed in more attractive schools. The court permitted limited discovery on that contention, found it to be meritorious, and concluded:

The School District's continued refusal over the past ten months to place Ms. Gurmankin in an appropriate position has prevented the court's order from accomplishing its purpose. Moreover, the School District has indicated that it will not make any further offers to the plaintiff unless compelled by court order. This court is under a duty to insure that its orders provide full and adequate relief, and if an order is inadequate, it should be modified accordingly.

It then amended the injunction to provide:

Within thirty (30) days of the date of this order, the defendants shall provide the plaintiff with a position as an English teacher at one of the six schools designated by plaintiff in Plaintiff's Supplemental Interrogatory, or at some other school acceptable to the plaintiff.

From this order the defendants again appealed, and again unsuccessfully sought a stay. The appeals were consolidated. In each we affirm.

## I. THE ORIGINAL INJUNCTION

The defendants contend that the court erred in finding a due process violation in the District's pre–1974 policy of refusing to allow blind persons to take the Philadelphia Teachers Examination. They also contend that an award of seniority is beyond the equitable powers of a federal court. Ms. Gurmankin defends the injunction not only for the constitutional reasons on which the district court relied, but also on equal protection grounds and on a statutory supremacy ground. The statutory supremacy argument refers to § 504 of the Rehabilitation Act of 1973, P.L. 93–112, 87 Stat. 357, 29 U.S.C. § 794:

[n]o otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

It was apparently in response to this statute that in 1974 the District changed its policy and permitted Ms. Gurmankin to take the examination.[2] If the statutory supremacy claim would suffice to sustain the injunction we would be obliged to rest on it rather than reach the due process ground on which the district court relied.[3] But as that court noted, the Rehabilitation Act of 1973 did not become effective until December, 1973. P.L. 93–112, § 500(a), 29 U.S.C. § 790(a). Ms. Gurmankin concedes that it would not apply to pre–1974 injuries. The same would appear to be true of the later Pennsylvania statutes.[4] The seniority relief afforded by the injunction is designed to remedy pre–1974 discrimination. Thus, that relief requires that we consider the district court's constitutional holding.

■ Relying on *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the court held that the

2. *See also* Act of December 19, 1974, P.L. 966, No. 318, amending the Pennsylvania Human Relations Act, 43 P.S. §§ 952–955 (1975 Cum. Supp.) to prohibit discrimination in employment because of a "non-job related handicap or disability." The district court opinion does not deal with any possible pendent state law claim, probably because initial proceedings under the

Pennsylvania statute must be filed before an administrative agency. 43 P.S. § 960.

3. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

4. *See* n. 2, *supra*.

District policy of preventing blind teachers from teaching sighted students created an irrebuttable presumption that blind persons could not be competent teachers, in violation of due process. In *LaFleur* the Supreme Court ruled that mandatory leaves for pregnant teachers, five months before the birth of their children created an irrebuttable presumption of physical incompetency to teach after the fourth month of pregnancy. The court held that denying pregnant teachers the opportunity to present evidence of continued competency violated due process. The challenge was not to the requirement that teachers be sufficiently healthy for the rigors of the classroom, but to the denial of the opportunity to show that they were. In this case, as well, Gurmankin's complaint is not addressed to the requirement that Philadelphia teachers pass a qualifying examination, which she eventually passed, but rather to the pre–1974 denial of the opportunity to demonstrate her competency. We agree

with the district court that *Cleveland Board of Education v. LaFleur, supra,* controls.[5] The refusals by the District to permit her to take the examination violated due process by subjecting Ms. Gurmankin to an irrebuttable presumption that her blindness made her incompetent to teach sighted students.

In *LaFleur,* of course, the court dealt with employed teachers, and thus with some continued expectation of employment based on state law. Ms. Gurmankin had no contract of employment, but she had an expectation, based on state law, of being admitted to the qualifying examination. In July 1970 she was issued a Professional Certificate, No. 190–34–3597, by the Pennsylvania Department of Education, certifying her as a qualified teacher of Comprehensive English. Under the rules of the Philadelphia School District this certificate was the only requirement for entrance to the examination.[6] She was, by virtue of

5. Appellant School District relies on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), contending that it overrules *LaFleur. Weinberger v. Salfi* rejected an "irrebuttable presumption" attack on the duration-of-relationship requirements of the Social Security Act, 42 U.S.C. §§ 416(c)(5) and (e)(2). However, in that case the Court was able to rely on the prior authority of *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960), which established a different due process standard for evaluating classification under the Social Security Act:

> ". . . we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

*Salfi* is distinguishable because it is a government benefits case. While this is not a distinction we would draw if writing on a clean slate, it is plainly the one drawn by the Supreme Court. *Flemming v. Nestor* was decided fourteen years before *LaFleur.* The Supreme Court evidently was content that *Flemming* and *LaFleur* coexist, even as recently as *Salfi.* There, Justice Rehnquist wrote, after discussing *Flemming v. Nestor* and several other "benefits" cases (422 U.S. at 768–770, 95 S.Ct. 2457):

> "These cases quite plainly lay down the governing principle for disposing of constitutional challenges *in this type of social welfare legislation.*" *Id.* at 770, 95 S.Ct. at 2469 (emphasis added).

In distinguishing *Salfi* from the *LaFleur* line, Justice Rehnquist noted that in *Salfi:*

> ". . . appell[ees] are completely free to present evidence that they meet the specified requirements; failing in this effort, their only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test." *Id.* at 772, 95 S.Ct. at 2470.

The very point of this case is that denying Gurmankin the *opportunity* to take a qualifying exam, the defendants deprived her of the opportunity to present evidence of her qualifications. This is not a case challenging the competency requirements for teachers. It challenges the deprivation of the right to present evidence of competency. It is quite different from *Salfi,* and the district court was correct to regard it as controlled by *LaFleur.*

6. School District Exhibit A to response No. 17 to plaintiff's interrogatories. 24 P.S. § 11–1106 empowers school districts to "employ necessary qualified professional employees." In Pennsylvania, school districts have only those powers conferred on them by statute, *Mulligan v. School Dist. of Hanover Twp.,* 241 Pa. 204, 88 A. 362 (1913). These powers include the power to make reasonable rules and regulations and to take other steps necessary and proper for the administration of the district. *Smith v. School District of Darby Twp.,* 388 Pa. 301, 130 A.2d 661 (1957).

the irrebuttable presumption of incompetency, deprived of the opportunity to take it between 1970 and 1974. The right to take the examination is a right arising under state law, and its deprivation in an arbitrary manner violated due process.

▮ The District urges that even if we agree that there was a due process violation, the trial court lacked the power to cure it by the award of rightful place seniority. It distinguishes cases such as *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *United States v. Int'l Union of Elevator Constructors*, 538 F.2d 1012 (3d Cir. 1976) as confined solely to remedies for violations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* But the language of Title VII in § 706(g), 42 U.S.C. § 2000e–5(g), on which the courts have relied in affording seniority relief is merely " . . . any other equitable relief as the court deems appropriate." There is no distinction in the law of equitable remedies between suits brought under Title VII and suits brought in reliance on 42 U.S.C. § 1983, or directly on the fourteenth amendment.

> [W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.

*Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The equitable relief of an award of a retroactive seniority date was, on the record before us, entirely appropriate.

Because the district court's due process analysis was necessary to the decision and adequately sustains the injunction there is no reason for us to address Ms. Gurmankin's equal protection contentions. For the same reason we need not consider whether those contentions should, as the School District urges, be rejected on the authority of *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam). Nor do we have any occasion in this case to determine whether § 504 of

the Rehabilitation Act of 1973 confers affirmative rights enforceable in private lawsuits. Courts which have considered that question have noted the similarity of language between § 504 and § 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. The latter statute was construed in *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) to imply a private cause of action. *See Lloyd et al. v. Regional Transportation Authority and Chicago Transit Authority*, 548 F.2d 1277, 1280–1281 (7th Cir. filed Jan. 18, 1977), and cases therein cited, holding, on the authority of *Lau v. Nichols, supra*, that a private cause of action in favor of the handicapped is implied from § 504. The amici, The American Coalition of Citizens with Disabilities, Inc., The American Council of the Blind, The National Association of Blind Teachers, and the Counsel for Handicapped People, urge that this is an appropriate cause in which to adopt that position. We conclude that the question is not properly before us since the disputed issue, seniority, is unaffected by § 504.

## II. MS. GURMANKIN'S APPEAL

▮ The District Court fixed Ms. Gurmankin's seniority date as September, 1970. In her cross appeal she contends that she should have been awarded a seniority date of June, 1968, when she graduated from college. We find no error. The court found that she first sought a Philadelphia employment opportunity in 1969, and that if she had then been admitted to the examination, she would have been offered suitable employment by September, 1970. These findings are not clearly erroneous.

## III. THE SUPPLEMENTAL ORDER

To support her contention that job offers made to her following the March 31, 1976 injunction were not in compliance with the injunction's seniority provisions, Ms. Gurmankin sought discovery of all secondary school English teachers hired from 1970 to 1977 and a list of the schools at which they are now teaching. The School District re-

sisted discovery and moved for a protective order. The court ruled that

[e]vidence that teachers hired since 1970 have managed to obtain positions at more desirable schools might indicate that the offers that have been made to the plaintiff have not given her the same rights as a teacher who commenced teaching in September, 1970. Thus, the plaintiff should be able to obtain some information on this subject. However, in light of the School District's representation that the plaintiff's request is burdensome and possibly could not be complied with in less than a year, we believe that the plaintiff can obtain useful information through a more narrow request. Consequently, at this time we will require the School District to provide the following information for any six schools to be selected by the plaintiff: (1) Are there any English teachers who were hired by the School District in or after 1970 presently assigned to that school? (2) If so, how and when were those teachers assigned to that school? This information should indicate whether recently hired teachers have been able to transfer to more desirable schools, and the School District should be able to provide the information without having to check an unnecessarily large number of personnel files.

When the limited discovery was completed it disclosed that numerous persons hired after September, 1970 were teaching English at the six high schools selected by the plaintiff as more attractive, although Ms. Gurmankin was not offered a position in any of the six. The court concluded that the School District's refusal over ten months to place Ms. Gurmankin in an appropriate position commensurate with her September, 1970, seniority date had prevented the order from accomplishing its purpose, and entered the supplemental order quoted above.[7]

■ The School District objects to that order because its implementation may re-

quire that some other teacher be "bumped." It made no showing by affidavit or testimony that in any of the six specific schools to which the supplemental order applies any "bumping" will occur. Nor has there been any showing that any teacher who may be "bumped" was placed in the position he or she occupies prior to the entry of the March 31, 1976 injunction. Certainly the School Board cannot be heard to claim equities of third parties, particularly when any such equities were created by its disobedience of the court's order. Moreover, even if the original order, by giving Ms. Gurmankin a competitive seniority date of September, 1970, put her in a position to bid for a more desirable school and "bump" teachers hired after that date (on this record a matter of speculation), it is settled that a court of equity has discretion to make such an order in a discrimination case. *Franks v. Bowman Transp. Co., Inc., supra*; *United States v. Int'l Union of Elevator Constructors, supra*. The School District's objections to the supplemental order are in essence the same objections it makes to the March 31, 1976 injunction. We reject them for the same reasons.

## CONCLUSION

The orders appealed from will be affirmed.

Costs taxed in favor of appellee Gurmankin in Nos. 76–1730 and 77–1273. Costs taxed in favor of the appellees in No. 76–2297.

7. See p. 186 *supra*.