**James M. UPSHUR and United Teachers of Oakland, Local No. 771, AFT, AFL–CIO, Plaintiff,**

v.

**Ruth LOVE, Superintendent of Schools of the Oakland Unified School District, Robert Blackburn, Assistant Superintendent of Schools of the Oakland Unified School District, Angelo Lievore, Administrative Director of Personnel of the Oakland Unified School District, Robert P. Bignami, Coordinator of Summer Schools, Oakland Unified School District, and David Tucker, Mel Caughell, Seymour Rose, Charles Goady, Lorenzo Hoopes, Peggy Stinnett and Barney Hilburn, members of the Board of Education of the Oakland Unified School District, and Oakland Unified School District, Defendants.**

No. C–77–0111.

United States District Court, N. D. California.

July 23, 1979.

Robert J. Bezemek, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiff.

Michael S. Sòrgen, Sandra Woliver, Oakland Unified School District, Oakland, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff James M. Upshur brought this suit against the Superintendent of Schools of the Oakland Unified School District ("School District"), members of the Board of Education of the School District, various other School District officials, and the School District itself, charging that the defendants' discriminatory policies and practices prevented plaintiff from obtaining an administrative position in the School District. James Upshur is blind. He alleges that he is qualified to be an administrator yet was denied placement on a list of those eligible for administrative jobs because of his blindness. Plaintiff contends that defendants thereby violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and denied him equal protection and due process, in violation of 42 U.S.C. § 1983. Plaintiff also asks this Court to exercise pendent jurisdiction over a number of state law claims. However, plaintiff's briefs and arguments have focused almost exclusively on his federal claims.

This action was filed on January 14, 1977.[1] The matter was tried to the Court

---

1. The suit was filed by plaintiff Upshur and by the United Teachers of Oakland, Local No. 771, AFT, AFL–CIO. The complaint states that Upshur is a member of Local No. 771, which is

on November 15, 16, 17, 18, and 20, 1978, with plaintiff appearing by Robert J. Bezemek, Esq., and defendants appearing by Michael S. Sorgen, Esq. Post-trial briefs were filed, and closing argument was heard on February 8, 1979. Thereafter the parties filed proposed findings of fact and conclusions of law. Upon consideration of all the evidence, the entire record herein, and the argument of counsel, the Court renders the following opinion, which shall serve as its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff Upshur is a tenured teacher in the Adult Education Program of the Oakland Unified School District. He is 58 years old and has been blind since 1963. Plaintiff graduated from San Francisco State University with a Bachelor of Arts degree in 1962. Prior to that date he had served in the United States Army for 20 years retiring with the rank of Major. From November 1962 to June 1963, Upshur worked as a day-to-day substitute teacher in the Oakland Unified School District. In April 1963, Upshur was hired as a fulltime teacher, but shortly thereafter he lost his sight in an automobile accident and was unavailable for employment again until 1965. From 1965 until 1971 Upshur served as a day-to-day substitute teacher in the School District. From 1971 to the present, Upshur has served as a five-sixths time teacher in the Adult School.

In or about April 1972, Upshur applied to be placed on the Administrative Preferred List, a list of eligible candidates for administrative positions within the School District. One qualifies for placement on the list by successfully completing a written examination given by the School District and an oral interview with a committee of administrators. Applicants are evaluated based on the "total process," and there is no minimum score for the written examination that must be achieved in order to be considered for placement on the list. No individual is required to take the written examination more than once. Candidates normally are permitted to have interviews every other year.

Upshur took the written examination in 1972 and had the assistance of a reader and scored in the lowest quartile.[2] After consideration of the written exam and the subsequent oral interview, the School District's Administrative Committee determined not to approve Upshur's placement on the Administrative Preferred List in 1972.[3]

In July 1973, Upshur received a General Administrative and General Secondary Credential for the State of California. Upshur

an employee organization representing certificated employees of public schools. The complaint does not allege that defendants caused injury to the union or request that the Court grant relief to the union. Nor does it contain allegations establishing that the union has standing to sue on Upshur's behalf. The case proceeded to trial as if Upshur were the sole plaintiff, and the Court will therefore focus solely on Upshur's claims.

Furthermore, the Court notes that plaintiff Upshur has not even attempted to establish liability on the part of defendant Robert R. Bignami. The factual allegations of the complaint include the assertion:

"Defendant ROBERT R. BIGNAMI, Coordinator of Summer Schools of the Oakland Unified School District, has denied to the named plaintiff a position as a summer school counselor during the summers of 1975 and 1976." Complaint, filed January 14, 1977, at p. 3.

However, plaintiff's claims, as presented at trial, were all based upon the fact that Upshur had been denied placement on the Administrative Preferred List.

2. Upshur's low score on the written exam did not preclude him from being placed on the Administrative Preferred List. The committee recognized that a written exam would not necessarily provide an accurate reflection of Upshur's abilities. In any event, no applicant is excluded solely on the basis of the written exam score.

3. Although plaintiff's complaint alleges that in 1972 as well as 1974 the Administrative Committee refused to place Upshur on the Administrative Preferred List because of his blindness, at trial plaintiff only presented evidence concerning the decision of the Committee in 1974. Thus, the Court will only consider plaintiff's claim with respect to that year.

had previously received a General Pupil Personnel Services Credential in September 1971, a Standard Adult School Credential in September 1970, and a Standard Secondary Credential in July 1969.

In October 1973, Upshur reapplied to the School District to be placed on the Administrative Preferred List. In May 1974, Upshur was interviewed by a committee of administrators, including defendant Angelo Lievore, Administrative Director of Personnel for the School District. In June 1974, Upshur was informed by letter that he would not be placed on the Administrative Preferred List.

Although the evidence on this point conflicted,[4] the Court concludes that during the 1974 interview the committee did ask Upshur a number of questions about how he would cope with his blindness in performing particular administrative tasks such as inspecting buildings and facilities, developing curriculum, and dealing with emergency situations. Upshur's response to these inquiries was simply that he would handle such difficulties with the help of an aide.

The Court further finds, on the basis of Lievore's testimony, that the committee members who interviewed Upshur decided not to place him on the Administrative Preferred List for two reasons. First, they did not believe that Upshur was qualified to be an administrator. They concluded that Upshur needed to sharpen and develop his administrative skills, particularly in such areas as curriculum planning, program development, and personnel matters, and that he had not demonstrated that he had the experience and the leadership ability necessary to be a successful administrator.

Second, the committee was concerned that Upshur's blindness would present difficulties in certain areas. The committee members were not satisfied with Upshur's responses to their questions about how Upshur would cope with his handicap in fulfilling particular administrative responsibilities. Upshur's invariable response that he would simply rely on an aide indicated that he had not given much thought to these problems and that he expected to be assigned an aide who would be fully qualified to perform a wide range of administrative duties.

After Upshur was notified that the committee had denied him placement on the Administrative Preferred List, he arranged an interview with Lievore to discuss the committee's decision. Lievore explained to Upshur that the committee did not believe he was qualified to be an administrator, and that he had not demonstrated the necessary leadership ability or the desired background in such areas as curriculum and instruction. Lievore also told Upshur that the committee had some concern about the problems presented by his blindness and had not been persuaded that he was able to cope with these problems.[5] Upshur was not satisfied with this explanation and wished to pursue the matter further. Eventually a meeting was arranged with defendant Robert Blackburn, then Deputy Superintendent of Schools for the School District. Upshur, accompanied by George Stokes, his union representative, met with Lievore and Blackburn to discuss the committee's decision. Upshur asked Blackburn to overturn the committee's decision, since he believed that he had been denied placement on the list solely because he was blind.[6]

4. Plaintiff contends that the interview was very brief and that no questions were posed concerning his blindness.

5. Although Upshur claims that Lievore simply told him his application was rejected because of his blindness, the Court finds this version of the facts incredible. Upshur's recollection is apparently based on a telephone conversation that preceded his meeting with Lievore. Upshur made a statement to the effect that he believed the committee had not placed him on the list simply because of his blindness and

Lievore did not respond to this charge but rather arranged to meet with Upshur in person to discuss the basis for the committee's decision.

6. Upshur recalls that Blackburn stated at this interview that Upshur's blindness was the primary reason he was denied placement on the list. Blackburn persuasively testified, however, that he did not make that statement. Rather, he had expressed concern about Upshur's lack of qualifications for the position and also referred to the problems presented by Upshur's blindness.

Blackburn thoroughly reviewed the committee's decision. He contacted committee members and individuals who had worked with Upshur and concluded that the committee's decision should not be overturned. He did not believe that the committee was biased against Upshur because of his handicap or had been unwilling to seriously consider him because of his blindness. Blackburn agreed with the committee's conclusion that Upshur lacked many of the qualities necessary to be an effective and able administrator. Blackburn already had some familiarity with Upshur's background, as he had served on the committee that interviewed Upshur in 1972. He had been disappointed at the time that Upshur did not evidence a better understanding of administrative responsibilities and that he lacked the leadership ability and the experience that the committee was seeking. Although Upshur emphasized his military background, the committee Blackburn served on did not feel that this experience had carried over to provide him with a solid understanding of problems of school administration.

In August 1974, Upshur filed a complaint with the Fair Employment Practices Commission ("FEPC") of the State of California, complaining that the committee had discriminated against him because of his visual handicap. Linda Tejada, an FEPC investigator, discussed Upshur's case with Lievore and Blackburn. In order to rebut the concerns those individuals expressed about a blind person performing effectively as a school administrator,[7] Tejada obtained information about two blind school administrators in other sections of the country who had been able to fulfill their responsibilities despite their handicaps. Although Blackburn was impressed by the achievements of these individuals, he felt that their personal characteristics were quite different from Upshur's and he remained convinced that

Upshur was not suited for an administrative position at that time, although he might be able to fill such a position at some point in the future. Blackburn informed Upshur of his decision in a letter dated December 11, 1974:

"In your specific case, I must concur with the Committee's recommendation. However, the District is open on the issue of being non-sighted as it relates to other administrative positions. The Committee's other recommendation that you gain additional training and breadth of experience to fully prepare you for an administrative position is appropriate and one that I'm sure you will deal with.

"I trust that these comments will be of assistance to you in understanding the basis for the decision."

The FEPC continued its investigation until January 1977, when Upshur informed the FEPC that he intended to file a suit in federal court. Investigator John Thompson recommended that the case be closed, since the complainant had "elected court action."

## CONCLUSIONS OF LAW

### Section 1983 Claim: Equal Protection

Count One of the complaint alleges that defendants deprived plaintiff of his rights under the Equal Protection Clause, thereby violating 42 U.S.C. § 1983.[8] Plaintiff contends that visually handicapped persons should be considered members of a "suspect class" and that his Equal Protection claim should therefore be evaluated under the strict scrutiny standard. Plaintiff further argues that even if this Court were to apply the rational basis test, liability would be established, since plaintiff claims that the School District absolutely prohibited the hiring of blind administrators and that this prohibition bore no rational relationship to a legitimate state interest.

---

7. Lievore and Blackburn had also expressed their and the committee's doubts about Upshur's administrative capabilities, in addition to acknowledging concern about how he would cope with difficulties arising from his blindness.

8. Jurisdiction is conferred by 28 U.S.C. § 1343. Defendants do not dispute that their actions constituted "state action."

■ Although plaintiff asserts that the visually handicapped should be considered a suspect class, he has provided the Court with very little support for this proposition. Plaintiff emphasizes that the class of which he is a member is extremely small,[9] yet this is clearly not sufficient to establish that the strict scrutiny standard is applicable. Plaintiff does not respond to defendants' counterargument that a physical disability is far different from a characteristic such as race, which does not bear upon one's ability to perform. Defendants contend, and this Court agrees, that a physical handicap is a trait far more analogous to age, which only evokes the rational basis test,[10] than to race, which has long been considered a suspect classification. This Court agrees with the reasoning employed in *Gurmankin v. Costanzo,* 411 F.Supp. 982 (E.D.Pa.1976), *aff'd,* 556 F.2d 184 (3 Cir. 1977), where the court expressed the view that the visually handicapped should not be considered a suspect class: [11]

" * * * [T]he plaintiff's claim that the blind constitute a 'suspect classification' is insupportable. Even admitting that the blind are a small, politically weak minority that has been subjected to varying forms of prejudice and discrimination, the limitations placed on a person's ability by a handicap such as blindness cannot be ignored. Unlike distinctions based on race or religion, classifications based on blindness often can be justified by the different abilities of the blind and the sighted." 411 F.Supp. at 992 n.8.[12]

■ Thus, the rational basis test is the applicable standard in this case. Under that test, the defendants clearly did not violate Upshur's rights under the Equal Protection Clause. The Court assumes that a visually handicapped individual can become a successful school administrator and that a rule denying all blind persons the opportunity to be considered for school administration positions would be unreasonable and would perhaps constitute a denial of equal protection under the rational basis test. However, no such blanket exclusion occurred in this case.

The Administrative Committee found that, wholly apart from the problems presented by his handicap, Upshur was not qualified to serve as a school administrator. Thus, Upshur's blindness was not the determinative factor affecting the committee's decision to deny him placement on the Administrative Preferred List.[13] Moreover, to the extent that the committee did consider Upshur's handicap in reaching its decision, this consideration was wholly rational. The

9. *See* plaintiff's Opening Brief, filed December 27, 1978, at 15–16:

"Because the blind are so few in number, and because blind teachers are even smaller in number, and because those blind teachers who aspire to be administrators are the smallest category yet, the blind are almost a classic example of the 'discreet [*sic*] and insular minority' that has been recognized as demanding special scrutiny and protection by the judiciary." (Citation and footnote omitted.)

Applying this type of analysis, nearly every plaintiff could argue that he or she is a member of some "discrete and insular minority."

10. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (*per curiam*).

11. *See also Sherer v. Waier,* 457 F.Supp. 1039, 1047 (W.D.Mo.1977).

12. Although the court stated its views on this issue, the holding of the case rested on a due process rather than an equal protection analysis.

13. In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that since the plaintiff school teacher had shown that his constitutionally protected conduct was a motivating or substantial factor affecting the defendant school board's decision not to rehire him, the school board had the burden of establishing by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

In this case, defendants established by a preponderance of the evidence that the committee believed Upshur was not qualified for an administrative position and therefore would not have placed him on the Administrative Preferred List even if he had not been blind. Therefore, even if the committee's consideration of Upshur's blindness had violated his constitutional rights, Upshur would not be entitled to relief.

committee is entrusted with the task of selecting the most competent and talented individuals available to fill administrative positions. It would be unreasonable to require the committee members to ignore an applicant's blindness in evaluating how he would be likely to function as an administrator. The committee considered the difficulties presented by Upshur's handicap, questioned him to some extent about how he would cope with these difficulties, and found his responses far from reassuring. The superficiality of his responses reinforced the committee's concern that Upshur did not possess the personal qualities necessary to be a successful administrator. The committee members did not simply rule out the possibility that a blind person could fill an administrative position, and their decision with respect to Upshur did not violate his rights under the Equal Protection Clause.

### Section 1983 Claim: Due Process

■ Count Two of the complaint alleges that defendants denied plaintiff employment as an administrator in the School District because of his blindness and that the District in effect had adopted an irrebuttable presumption that visually handicapped teachers are unable to perform administrative functions. Upshur contends that the Administrative Committee's application of this irrebuttable presumption in considering his case violated his rights under the Due Process Clause, thereby establishing liability under 42 U.S.C. § 1983.[14]

Plaintiff relies primarily upon the Supreme Court's decision in *Cleveland Board*

of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), in which the Court held that the mandatory maternity leave rules challenged by plaintiffs, two high school teachers, violated due process in that the rules created a conclusive presumption that every teacher who was four or five months pregnant was physically incapable of continuing her teaching duties. The Court viewed these rules as overbroad and noted that

"[t]here is no individualized determination by the teacher's doctor—or the school board's—as to any particular teacher's ability to continue at her job." 414 U.S. at 644, 94 S.Ct. at 798.[15]

Similarly, Upshur contends that the Administrative Committee was required to consider his qualifications and make an individualized determination as to whether he was qualified to serve as an administrator, rather than rejecting him solely because of his blindness. Defendants agree with the proposition that an employment policy establishing an irrebuttable presumption that a blind person could not be employed would violate due process, relying on the Court of Appeal for the Third Circuit's decision in *Gurmankin v. Costanzo*, 556 F.2d 184 (3 Cir. 1977). In *Gurmankin*, the court held that a school district policy preventing blind teachers from teaching sighted students created an irrebuttable presumption that violated due process under the standard set forth in *LaFleur*.[16] 556 F.2d at 186–187.

Even assuming that *LaFleur* would be controlling if a school district were to adopt a policy of excluding all blind persons from administrative positions,[17] the Court is un-

---

**14.** Jurisdiction over this claim is conferred on the Court by 28 U.S.C. § 1343.

**15.** *See also Turner v. Department of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975) (*per curiam*).

**16.** *See also Davis v. Bucher*, 451 F.Supp. 791, 800 (E.D.Pa.1978). *But see Counts v. United States Postal Service*, 17 F.E.P. 1161, 1164–1165 (N.D.Fla.1978).

**17.** The Court is not entirely persuaded that the *LaFleur* "irrebuttable presumption" due process analysis, rather than a traditional equal

protection analysis, should be applied in such a case. In *Beazer v. New York City Transit Authority*, 399 F.Supp. 1032 (S.D.N.Y.), *aff'd*, 558 F.2d 97 (2 Cir. 1977), *rev'd sub nom. New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), the district court held that a transit authority's blanket exclusion from any form of employment of all former heroin addicts participating in methadone maintenance programs violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The district court's due process analysis focused on the irrebuttable presumption theory of *LaFleur*.

able to find any violation of due process on the facts of this case. The Oakland Unified School District did not establish a flat ban on hiring blind administrators. The Administrative Committee considered Upshur's application and made an individualized determination that he was not qualified for an administrative position. Thus, plaintiff has failed to establish that defendants violated his rights under the Due Process Clause.

## Rehabilitation Act of 1973

Plaintiff's primary claim is based on Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which provides in pertinent part:

"No *otherwise qualified* handicapped individual in the United States, as defined in section 706(6) of this title, shall, *solely by reason of his handicap*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (Emphasis added.)

Plaintiff asserts that he was qualified for an administrative position in the School District and was denied placement on the Administrative Preferred List solely because of his blindness. Count Three of the complaint alleges that the School District receives substantial amounts of federal financial assistance and that the School District's refusal "to place plaintiff UPSHUR on the Administrative Preferred List and to appoint him to an administrative position violate[d] his rights arising under 29 U.S.C. § 794, and thereby additionally violate[d] 42 U.S.C. § 1983." [18]

Defendants do not dispute that the School District receives substantial amounts of federal funding and that Upshur is a "handicapped individual" as defined in 29 U.S.C. § 706(6). [19] Defendants assert, however, that plaintiff is not entitled to pursue a private cause of action under Section 504 and that plaintiff has not exhausted the administrative remedies provided in the Section 504 regulations issued by the Department of Health, Education and Welfare. Plaintiff has not addressed the issue of whether a private cause of action may be implied under Section 504, although he clearly assumes that a private action may be brought. As to the exhaustion issue, plaintiff asserts that at the time the lawsuit was filed, no administrative remedies under Section 504 were available.

Although defendants raised these two issues, they have not discussed them at any length, but have simply noted in their post-

399 F.Supp. at 1057. Although the due process argument was not raised before the Supreme Court, the Court noted the district court's ruling and rejected it:

"The District Court also concluded that [the Transit Authority's] rule violates the Due Process Clause because it creates an 'irrebutable [*sic*] presumption' of unemployability on the part of methadone users. 399 F.Supp. at 1057. Respondents do not rely on the due process argument in this Court, and we find no merit in it." 99 S.Ct. at 1369 n.38. Although the Supreme Court did not explicitly distinguish *LaFleur* or discuss the reach of the *LaFleur* irrebuttable presumption theory, the Court did employ an equal protection analysis and rejected the argument that an individualized determination of the qualifications of each job applicant was constitutionally required.

Since Upshur was not the victim of a flat ban on employment of blind administrators that might be classified as an "irrebuttable presumption," this Court finds it unnecessary to explore the precise reach of the *LaFleur* irrebuttable presumption theory. In light of the

Supreme Court's comment on the due process issue in *New York Transit Authority*.

**18.** Complaint, filed January 14, 1977, at 14.

**19.** Section 7 of the Rehabilitation Act of 1973, 29 U.S.C. § 706(6) defines a "handicapped individual" as follows:

"The term 'handicapped individual' means any individual who (A) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (B) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter. For the purposes of subchapters IV and V of this chapter, such term means any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (B) has a record of such an impairment, or (C) is regarded as having such an impairment."

trial brief that the Supreme Court granted certiorari in the case of *Davis v. Southeastern Community College*, 574 F.2d 1158 (4 Cir. 1978) (*en banc*), *cert. granted*, 439 U.S. 1065, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979). The petition for certiorari in that case presented several issues concerning the Rehabilitation Act, including the question of whether Section 504 impliedly creates a private cause of action and whether, if such a private right of action is implied, the plaintiff must exhaust available HEW administrative remedies before filing suit. However, the Supreme Court's recent decision in that case, —— U.S. ——, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), did not reach these issues. In effect the Court assumed *arguendo* that the plaintiff in *Davis* was entitled to sue in federal court and then ruled against her on the merits of her Section 504 claim. The Court stated in a footnote:

"In addition to challenging the construction of § 504 by the Court of Appeals, Southeastern also contends that respondent cannot seek judicial relief for violations of that statute in view of the absence of any express private right of action. Respondent asserts that whether or not § 504 provides a private action, she may maintain her suit under 42 U.S.C. § 1983. In light of our disposition of this case on the merits, it is unnecessary to address these issues and we express no views on them. See *Norton v. Mathews*, 427 U.S. 524, 529–531, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976); *Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 1798, 36 L.Ed.2d 596 (1973); *United States v. Augenblick*, 393 U.S. 348, 351–352, 89 S.Ct. 528, 531, 21 L.Ed.2d 537 (1969)." 99 S.Ct. at 2366 n.5.

Virtually all the courts that have considered the issue have held that a private right of action may be implied under Section 504. *See, e. g., Leary v. Crapsey*, 566 F.2d 863 (2 Cir. 1977); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8 Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2 Cir. 1977); *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7 Cir. 1977).[20] Although the Court would normally rule on such an issue before proceeding to the merits of the claim, the Court is persuaded that in this instance the wisest course to follow is that taken by the Supreme Court in *Davis*, for, as in *Davis*, plaintiff here has not established that a violation of Section 504 occurred. The cases cited by the Supreme Court in *Davis* in support of its decision to avoid the private right of action issue and proceed to the merits indicate that the Court viewed the issue as a difficult one to resolve. In fact, in an opinion published shortly before *Davis*, Justice Powell, author of the Court's unanimous opinion in *Davis*, expressed his concern that the lower courts have too readily found implied private rights of action under various federal statutes, including the Rehabilitation Act. *See Cannon v. University of Chicago*, —— U.S. ——, 99 S.Ct. 1946, 1974–1985, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting). Since the parties in this case have not even briefed the private right of action issue, and since under the approach taken by the Supreme Court in *Davis* the issue need not be resolved in this case, this Court will simply assume that Upshur is entitled to bring an action directly under Section 504.[21]

**20.** *But see Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87, 18 F.E.P. 1141 (4 Cir. 1978) (no private right of action under § 504 unless primary purpose of federal funding is providing employment), *cert. denied*, —— U.S. ——, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979).

**21.** The Court does not address the argument implicitly raised in plaintiff's complaint that a violation of Section 504 could give rise to a claim under 42 U.S.C. § 1983. The plaintiff in *Davis* argued that her suit could be brought under § 1983, since defendant had violated Section 504 and had thus denied her rights guaranteed under the "law of the United States." *Davis v. Southeastern Community College*, 424 F.Supp. 1341, 1345 (E.D.N.C.1976). Since the district court found that Section 504 had not been violated, it did not rule on this issue. On appeal, the Court of Appeals for the Fourth Circuit concluded that the district court had implicitly recognized a private cause of action under Section 504. It affirmed this holding and therefore did not address the Section 1983 issue, although it noted that exhaustion of administrative remedies is not required in suits brought under 42 U.S.C. § 1983. *Davis v. Southeastern Community College*, 574 F.2d

■ The Court also finds it unnecessary to determine whether, if an implied private right of action does exist under Section 504, the plaintiff must exhaust available HEW administrative remedies before filing suit. At the time Upshur filed this lawsuit, such remedies were not available.[22] Therefore, this Court finds that even if exhaustion of administrative remedies generally would be required in suits brought under Section 504, that requirement would not preclude consideration of the claim presented in this case.[23]

■ Turning to the merits of Upshur's Rehabilitation Act claim, the Court concludes that no violation of Section 504 occurred in this case. First, Upshur is not an "otherwise qualified" applicant for employment. See 29 U.S.C. § 794. The Administrative Committee concluded that aside from the problems presented by his blindness, Upshur was not qualified for an administrative position. Second, Section 504

is violated only if a recipient of federal funding excludes an "otherwise qualified" handicapped individual from participation in its activities "solely by reason of his handicap." In *Davis, supra,* the Supreme Court interpreted Section 504 as "indicate that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." 99 S.Ct. at 2363 (footnote omitted). The Supreme Court rejected the Court of Appeals' view that the Section 504 regulations governing admission to post-secondary and vocational educational programs require educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate:

"The court below * * * believed that the 'otherwise qualified' persons protected by § 504 include those who would be able to meet the requirements of a particular program in every respect ex-

1158, 1160 n.4 (4 Cir. 1978) (*en banc*). The Supreme Court also referred to the issue but declined to reach it. *Davis v. Southeastern Community College,* —— U.S. ——, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980 (1979). For purposes of this opinion, the Court will assume that a private right of action may be implied under Section 504. Jurisdiction would therefore be based on 28 U.S.C. § 1331. The amount in controversy in this case exceeds $10,000.

**22.** The complaint was filed on January 14, 1977. The HEW regulations implementing Section 504 and providing for administrative remedies did not become effective until June 3, 1977. 42 Fed.Reg. 22676 (May 4, 1977).

**23.** In fact, it seems unlikely that exhaustion would be required. In *Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court held that a private cause of action should be implied under Title IX. The Court rejected the argument that "individual suits are inappropriate in advance of exhaustion of administrative remedies," 99 S.Ct. at 1962 n.41, emphasizing the inadequacies of the administrative procedures available for enforcement of Title IX. The Court noted that the individual complainant is not allowed to participate in the investigation or subsequent enforcement proceedings, that a voluntary compliance agreement need not include relief for the complainant, and that a complete cut-off of federal funds was not an appropriate remedy for an individual complainant, 99 S.Ct. at 1962 & n.41. Furthermore, the

Court noted that the agency may either decide not to investigate or may not reach a decision on an individual complaint within a reasonable period of time. *Ibid.* at n.41.

The regulations implementing Section 504 adopt the Title VII enforcement procedures, 45 C.F.R. § 84.61, the same administrative mechanism used to enforce Title IX, 45 C.F.R. § 86.71. Thus, the concerns expressed by the Court in *Cannon* with respect to the adequacy of Title IX administrative remedies would also apply to complaints under Section 504. These concerns were explored at some length in *Whitaker v. Board of Higher Education,* 461 F.Supp. 99, 107–109 (E.D.N.Y.1978). This Court is persuaded that even if the Supreme Court were to hold that an implied private right of action does exist under Section 504, it would not impose an exhaustion requirement.

The Court noted in *Cannon* that both HEW and the Department of Justice advocated a "flexible approach" with respect to the interrelation of private suits and administrative enforcement procedures. HEW argued that "a District Court might choose to defer to the decision of the relevant administrative agency, if, unlike here, one has been reached in advance of trial and it may wish to stay its hand upon request of HEW if an administrative investigation or informal negotiations are in progress and might be hampered by judicial action." 99 S.Ct. at 1952 n.8. Such an approach would not preclude this Court from considering Upshur's claim.

cept as to limitations imposed by their handicap. See 574 F.2d at 1160. Taken literally, this holding would prevent an institution from taking into account any limitation resulting from the handicap, however disabling." 99 S.Ct. at 2367. Focusing on the plain meaning of the statutory language, the Court concluded that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Ibid.*

■ Therefore, although the Administrative Committee did consider the limitations resulting from Upshur's handicap, this was not inconsistent with the requirements of Section 504. In fact, the Section 504 regulations concerning employment of handicapped individuals specifically provide that a recipient of federal funds may "make preemployment inquiry into an applicant's ability to perform job-related functions." 45 C.F.R. § 84.14. Furthermore, the regulations dealing with employment define a "qualified handicapped person" as "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k)(1).

■■ The regulations defining "reasonable accommodation" only apply where the prospective employee is "otherwise qualified" for the position. 45 C.F.R. § 84.12(a). Since Upshur would not have been selected for an administrative position in any event, the committee was not obligated to consider what "reasonable accommodation" would be called for in Upshur's case. Yet the committee did assume that an aide would be provided and that Upshur would have to perform certain administrative duties in a somewhat different manner than a sighted individual. The committee members nevertheless concluded that Upshur's blindness would present significant problems, and they were not confident that Upshur would

be able to deal with these problems. The School District was not prepared to hire an aide who was fully qualified to serve as an administrator. Particularly in light of the *Davis* decision, the Court agrees that Section 504 does not require that degree of accommodation to the needs of handicapped individuals.

The fact that the committee did not consider Upshur to be qualified for an administrative position is sufficient to establish that Section 504 was not violated in this case. In addition, the Court finds that the committee's consideration of the problems likely to confront a blind administrator and its inquiry into how Upshur would cope with these difficulties was entirely consistent with the requirements of the Rehabilitation Act. The Court must therefore conclude that plaintiff Upshur has not established a violation of his rights under Section 504.

### California Constitutional Claims

■ Count Four of plaintiff's complaint alleges that defendants have violated plaintiff's rights under the Equal Protection Clause of the California Constitution.[24] In the complaint and again in the post-trial brief, plaintiff contends that both the Due Process and the Equal Protection Clauses of the California Constitution[25] have been violated in this case. Plaintiff has not argued that the Equal Protection and Due Process Clauses of the California Constitution provide broader protection to plaintiff than the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In fact, plaintiff's briefs fail to address plaintiff's state constitutional claims. The Court is persuaded that the same analysis applied to the federal constitutional claims is applicable here. Accordingly, the Court holds that defendants have not violated plaintiff's rights under the Due Process and Equal

24. The Court may properly exercise pendent jurisdiction over this claim since the federal claims and the state claim "derive from a common nucleus of operative fact." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

25. *See* California Constitution, Art. 1, § 7(a): "A person may not be deprived of life, liberty, or property without due process of law or [be] denied equal protection of the laws."

Protection Clauses of the California Constitution.

### California Fair Employment Practices Act Claim

 Count Five of plaintiff's complaint claims that defendants' "discriminatory policies" violated the California Fair Employment Practices Act, Cal.Labor Code § 1410 *et seq.* Plaintiff asks the Court to exercise pendent jurisdiction over this related state law claim. Although plaintiff's post-trial brief argues that defendants have violated "pendent state law prohibiting discrimination on account of physical disability,"[26] plaintiff has not provided the Court with any analysis supporting this conclusion and has failed to specify the particular code sections on which he relies.[27] The Court finds it unnecessary to consider the merits of the claim in any event, for plaintiff has not established that he exhausted available state administrative remedies with respect to this claim.

The complaint alleges that plaintiff exhausted administrative remedies "in that [he has] filed [a complaint] with the appropriate State authorities, which * * * resulted in no action to remedy these discriminatory practices of defendants."[28] However, plaintiff concedes and the evidence in the record establishes that the FEPC terminated its investigation of Upshur's complaint because plaintiff notified the Commission that he had elected to file suit in federal court. Since plaintiff voluntarily terminated the FEPC investigation, the Court concludes that plaintiff has not established exhaustion of administrative remedies as to the Fair Employment Practices Act claim.[29] The Court therefore will not address the merits of that claim.[30]

### CONCLUSION AND ORDER

The Court understands plaintiff's disappointment in not being selected as a potential school administrator and admires plaintiff's courage and determination in seeking

---

26. Plaintiff's Opening Brief, filed December 27, 1978, at 17–18.

27. Plaintiff merely refers to "§§ 1412 et seq." of the California Labor Code. Section 1412 provides in pertinent part:

 "The opportunity to seek, obtain and hold employment without discrimination because of * * * physical handicap * * * is hereby recognized as and declared to be a civil right."

 Plaintiff does not cite Section 1420 of the Fair Employment Practices Act, which declares that it shall be an unlawful employment practice for an employer to refuse to hire an individual because of physical handicap "unless based upon a bona fide occupational qualification" or unless based upon applicable state or federal security regulations. Section 1420(a)(1) further provides:

 "Nothing in this part shall prohibit an employer from refusing to hire or discharging a physically handicapped employee, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of a physically handicapped employee, where the employee, because of his physical handicap, is unable to perform his duties, or he cannot perform such duties in a manner which would not endanger his health or safety or the health and safety of others."

 Plaintiff has not addressed the applicability of Section 1420 to the case at bar.

28. Complaint, filed January 14, 1977, at 11–12.

29. The Fair Employment Practices Act has been construed as requiring exhaustion of the administrative remedies provided by the Act. *See Bennett v. Borden, Inc.*, 56 Cal.App.3d 706, 128 Cal.Rptr. 627 (1976). Although the Act was amended in 1977 to permit the FEPC to authorize the complainant to bring a civil action under the Act, *see* Cal.Labor Code § 1422.-2(b), added by Cal.Stats.1977, c. 1188, § 34, the 1977 amendment did not become operative until January 1, 1978, nearly a year after the FEPC's investigation of Upshur's complaint had been terminated at his request. *See* Cal. Stats.1977, c. 1188, § 50.

30. Plaintiff's complaint contains two other "state law" claims. Count Six alleges that defendants' discriminatory policies violated "the Equal Protection and affirmative action policy adopted on March 26, 1976 by the Oakland Unified School District." Complaint, filed January 14, 1977, at p. 16. Count Seven alleges that defendants' discrimination violated "§ 2802.5 of the District's policy statement adopted in 1975 which requires the District to consider handicapped teachers for employment." *Ibid.* The Court will not consider these claims, as they were not referred to in the parties' joint pre-trial statement or in the briefs and no evidence as to the allegedly violated policy statements was introduced at trial.

to advance in his chosen profession despite his handicap. On the basis of the evidence presented at trial, however, the Court finds that the Administrative Committee's decision not to place Upshur on the Administrative Preferred List in 1974 did not violate plaintiff's rights under the Federal or state constitutions and did not violate Section 504 of the Rehabilitation Act of 1973.

Accordingly, IT IS HEREBY ORDERED that judgment be entered in favor of defendants.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall prepare an appropriate form of judgment in accordance with this memorandum of opinion and submit it to the Court for execution within ten (10) days hereof.