**Walter CAMENISCH, Plaintiff-Appellee,**

v.

**The UNIVERSITY OF TEXAS et al., Defendants-Appellants.**

**No. 78–2191.**

United States Court of Appeals, Fifth Circuit.

April 28, 1980.

Rehearing and Rehearing En Banc Denied May 29, 1980.

---

Martha H. Allan, State & County Div.,
Lonnie F. Zwiener, Asst. Attys. Gen., Austin, Tex., for defendants-appellants.

Walter W. Barnett, Atty., Charles Pereyra-Suarez, Drew S. Days, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for amicus curiae.

Sheldon E. Steinbach, Gen. Counsel, American Council on Ed., Washington, D. C., for American Council on Ed.

Marc P. Charmatz, Sy DuBow, Andrew S. Penn, Washington, D. C., Nat. Assoc. of the Deaf Legal Defense Fund, Charley L. Smith, Bellville, Tex., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the state of Texas from a district court order granting the plaintiff's motion for relief under the Rehabilitation Act of 1973, 29 U.S.C. § 794. The court ordered the University of Texas to procure and compensate a qualified interpreter to assist the plaintiff in his classes during the 1978 term. As part of that order, the court conditioned its grant of preliminary relief on the plaintiff's filing an administrative complaint with the Department of Health, Education and Welfare (HEW). The court also stayed the action, pending an HEW administrative determination on the merits. We uphold the district court's order granting injunctive relief, but vacate that part of the order conditioning the grant on the filing of an administrative complaint with HEW. We also dissolve the stay of the action.

Walter Camenisch, a deaf graduate student at the University of Texas, filed a complaint and motion for a preliminary injunction on March 1, 1978. In that complaint, he alleged that the University had failed to provide him with sign language interpreter services in violation of Section 504 of the Rehabilitation Act of 1973, and that as a result, he would be unable to complete a master's degree by the end of the 1978 summer term. The plaintiff's completion of a master's degree that summer was a prerequisite to his maintaining employment as acting dean of students of the East Campus of The Texas School for the Deaf.

Section 504 of the Rehabilitation Act, as written then, said: [1]

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The University of Texas is a recipient of over $31,400,000 in federal assistance and has agreed to comply with Section 504 as a condition to continued receipt of federal funds. The HEW regulations require colleges to provide auxiliary aids, such as interpreters, for deaf students who cannot otherwise participate in college programs.[2] However, the University denied Camenisch his request for sign language interpreter services on the grounds that he did not meet the University's established criteria for financial assistance to graduate students. The University said he should therefore pay for his own interpreter.

In May 1978, the district court granted the plaintiff's motion for preliminary relief. While not reaching the merits of the claim, the court noted that every court of appeals which had considered the issue had found a private right of action under Section 504. The court further concluded that requiring the plaintiff to exhaust HEW administrative remedies before seeking relief would result in irreparable injury to him, and would defeat his rights under Section 504. The court therefore issued a preliminary injunction relying on this Court's standard for temporary relief, which is substantial likelihood that the plaintiff will prevail on the merits, as set out in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567

---

1. The Act was amended slightly in November 1978.

2. See 45 C.F.R. 84.44(d) (1979).

(5th Cir. 1974). As stated previously the court also, however, required the plaintiff to post a $3,000 security bond pending the outcome of the litigation pursuant to Rule 65(c) F.R.C.P.; conditioned its grant of relief on the plaintiff's filing an administrative complaint with HEW and stayed the action pending an HEW administrative determination on the merits.[3]

■ We first must determine the proper standard to be used in reviewing the district court's preliminary injunction order. Appellate review of such orders is limited to an examination of whether the district court abused its discretion. *Blackshear Residents Organization v. Romney*, 472 F.2d 1197, 1198 (5th Cir. 1973).

■ The court below applied this Court's standards for the granting of preliminary relief as set out in *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). In *Canal Authority*, this Court delineated four factors that had to be met before a court could grant preliminary relief. Those factors are:

1. Irreparable harm to the plaintiff from failure to issue the injunction.
2. The relative lack of harm to the defendant from issuance of the injunction.
3. The public interest.
4. Probability that the plaintiff will ultimately succeed on the merits.

■ In this case, it is clear that Camenisch would have suffered irreparable harm from a failure to issue the injunction. Without an interpreter, he would have been unable to complete the academic program in which he was enrolled, would not have been able to earn his degree, and thus might have lost his position as Acting Dean of Students. The harm to the defendant of granting the injunction was not great either. This question of the balance of hardship—how the plaintiff's harm compares to

the harm to the defendant if the preliminary injunction is granted—must be considered in the context of the requirement of posting a bond. *See Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944); *Note, Interlocutory Injunctions and the Injunction Bond*, 73 Harv.L.Rev. 333 (1959). In this case, the posting of the $3,000 bond by the plaintiff clearly protected the defendant from any permanent harm.

The final two considerations—the public interest and the probability that the plaintiff will ultimately succeed on the merits, can only be considered by an examination of the merits of Camenisch's claim. We therefore turn to an examination of that claim.

I

■ The district court found that every United States Court of Appeals which had attempted to determine whether the Rehabilitation Act conferred a private individual right of action under Section 504 to enforce the Act through injunctive relief had found that it did. The University argues here, again, that there is no private right of action under Section 504, even in suits for injunctive relief.

■ As an initial point, it has been suggested to this Court that this issue is now moot, because Camenisch has received the relief he sought. Such an argument shows a basic lack of understanding of what is at stake in this dispute. The University provided Camenisch with an interpreter *at its own expense* under order of the district court. The University argues, in effect, that Camenisch should have had to pay for that interpreter, since they were under no obligation to provide one. Camenisch has posted a bond that can be used to repay the appellants, if he loses this appeal. Therefore, despite the fact that Camenisch has graduated, a justiciable issue remains:

**3.** Shortly before this case was argued here, the Department of Health, Education and Welfare issued a letter of findings dated January 24, 1980. In that letter, which was a response to the administrative complaint filed in May 1978,

HEW found that the University was in violation of Section 504 by failing to provide educational auxiliary aids to students with impaired sensory skills.

whose responsibility is it to pay for this interpreter?[4] This is simply another way of stating the traditional rule that issues raised by an expired injunction are not moot if one party was required to post an injunction bond. *Liner v. Jafco, Inc.,* 375 U.S. 301, 305, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964); *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1266 (5th Cir. 1978).[5]

Turning to the merits, we find ourselves in complete agreement with the other Courts of Appeal that have decided this issue and found such a right of action, applying the test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir. 1977); *United Handicapped Federation v. Andre,* 558 F.2d 413 (8th Cir. 1977); *Davis v. Southeastern Community College,* 574 F.2d 1158 (4th Cir. 1978), *rev'd on other grounds,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *National Association for the Advancement of Colored People v. The Medical Center, Inc.,* 599 F.2d 1247 (3rd Cir. 1979). We agree with the *Cort analysis* of Section 504 undertaken in *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1284–86 (7th Cir. 1977) in which that Court found an explicit congressional intent to create such a private right of action and found that such a right was consistent with the purposes of the legislation.[6]

**4.** Because the issue is stated in this manner does not mean that this is a suit for damages. Camenisch filed a claim for injunctive relief and the appeal is from an injunction. Therefore, this case concerns only a right of action for injunctive relief.

**5.** The fact that HEW, in response to Camenisch's administrative complaint, has issued a letter of findings that the University was in violation of Section 504 by failing to provide interpreters to assist students like Camenisch, does not render this case moot either. We hold in Part II of this opinion that the administrative procedures under the Rehabilitation Act are not appropriate to private individual suits to enforce Section 504 in the courts. Therefore, Camenisch's court claim stands by itself.

**6.** *See e. g.,* The Committee Report to the Senate, which stated:

We also take note, of the Supreme Court's decision in *Campbell v. Kruse,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977) in which the Supreme Court vacated the judgment of a three-judge district court, which held that a Virginia statute, providing partial tuition grants to handicapped children attending private schools, denied equal protection to handicapped children who were not affluent enough to take advantage of these partial grants. The Supreme Court directed the district court to decide the plaintiffs' claim "based on the federal statute, Sec. 504 of the Federal Rehabilitation Act of 1973." 434 U.S. at 808, 98 S.Ct. at 38. With this ruling the Supreme Court seemingly acknowledged the judicial authority to entertain private suits for injunctive relief under Section 504.[7]

■ The appellants argue here that *Lloyd* and other cases were decided before HEW promulgated regulations designed to implement Section 504. Their position apparently is that the legislative history of the Act shows a Congressional intent that any judicial action under the Act be limited to a post-administrative remedy judicial review. In *Lloyd,* the Seventh Circuit said:

We expressly leave open as premature the question whether, after consolidated procedural enforcement regulations are issued to implement Section 504, the judicial remedy available must be limited to post-administrative remedy judicial re-

This approach to implementation of Section 504, which closely follows [Title VI], . . . would ensure administrative due process (right to hearing, right to review), provide for administrative consistency within the Federal government as well as relative ease of implementation, and *permit a judicial remedy through a private action.* (Emphasis and words in brackets added.)
S.Rep. No. 93–1297, 93 Cong. 2d Sess. 39–40, *reprinted in* 4 U.S.Code Cong. & Admin. News, pp. 6373, 6391 (1974).

**7.** *See* also the opinion of Justice Stevens in *Regents of University of California v. Bakke,* 438 U.S. 265, 420 n. 27, 98 S.Ct. 2733, 2748 n. 27, 57 L.Ed.2d 750 (1978) which seems to recognize that Section 504 of the Rehabilitation Act can be enforced by private actions in the courts.

view. In any event, the private cause of action we imply today must continue at least in the form of judicial review of administrative action. And until effective enforcement regulations are promulgated, Section 504 in its present incarnation as an independent cause of action should not be subjugated to the doctrine of exhaustion. But assuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to *a posteriori* judicial review. (Citations omitted.) 548 F.2d at 1286 n. 29.

We reject this argument. First, issuance of these regulations preceded the Supreme Court's decision in *Campbell v. Kruse.* Second, the administrative procedures adopted for enforcement of Section 504 do not constitute the "consolidated procedural enforcement regulations" contemplated in *Lloyd, supra,* 548 F.2d at 1286 n. 29. As HEW has itself explained, these procedures are only intended to be in effect until "such time as they are superseded by . . . a consolidated procedural regulation applicable to all . . . civil rights statutes and executive orders administered by the Department." 45 C.F.R. Part 84, App. A, p. 394 (1979).[8] Third, in the recent case of *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court found a private right of action under Title IX. The administrative procedures applicable to that right of action are identical to the procedures applied to complaints under Section 504. The regulations implementing Section 504 adopt the Title VI enforcement procedures, 45 C.F.R. § 84.61 (1979), the same administrative mechanisms used to enforce Title IX, 45 C.F.R. § 86.71 (1979). When the Supreme Court found a private right of action under

Title IX despite these regulations, it implicitly rejected the argument that these same procedures militated against the finding of a private right of action under Section 504.[9] Therefore, we find that Section 504 creates a private individual right of action for equitable relief.[10]

In a letter to this Court, the appellant has made the additional argument that the Supreme Court's recent decision in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) bars relief for this plaintiff. In *Southeastern Community College,* Mrs. Davis, a deaf person, sought admission to Southeastern's Associate Degree Nursing program. Completion of study in that program would qualify her for certification as a registered nurse. She was denied admission, solely because of her disability. She brought suit claiming discrimination under Section 504, but the Supreme Court unanimously held there was no illegal discrimination. The Court found that Mrs. Davis was not an "otherwise qualified handicapped individual within the meaning of § 504," holding that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* 99 S.Ct. at 2367. The appellant argues that the holding in *Southeastern Community College* is applicable here.

We disagree. The decision in *Southeastern Community College* was clearly not intended to bar relief under this statute for all handicapped people in the future. In *Southeastern Community College,* the Supreme Court said:

We do not suggest that the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons always will

---

**8.** This is not to say that once such consolidated procedural regulations are in effect, we will adopt the appellant's view. We specifically reserve judgment on that question.

**9.** See *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1083 (5th Cir. 1980):

"Moreover in *Cannon v. University of Chicago,* the Supreme Court found an implied cause of action in Title IX . . . . .

The parallel in construction between Title IX and Section 504 is evident." [Citations omitted.]

**10.** We expressly reserve judgment on the question whether Section 504 creates a private right of action in suits for damages. *See Miener v. Missouri,* 48 U.S.L.W. 2522 (E.D.Mo. 2-12-80); *Patton v. Dumpson,* 48 U.S.L.W. 2523 (S.D.N.Y. 2-12-80).

be clear. . . . Identification of those instances where a refusal to accommodate the needs of a disabled person amounts to discrimination against the handicapped continues to be an important responsibility of HEW.

*Id.* at 2370.

In this case, HEW regulations require institutions to provide services in their academic programs to accommodate the handicapped, including the provision of such services as sign language interpreters.[11] However, the HEW regulations did not require the sort of "individual attention" services that Mrs. Davis required to get through nursing school, an educational program that provided much more than simply academic training, *Southeastern Community College* at 2368–69.

Like the Supreme Court, we also take special note of the analysis of the district court in *Davis v. Southeastern Community College*, 424 F.Supp. 1341 (E.D.N.C., 1976), which found that Mrs. Davis had not been discriminated against. There, the Court said:

[it] would most probably be impermissible to exclude a blind or deaf person from admission to a law school, if academically qualified. However, reason dictates that it would be entirely permissible to exclude a person without sight from a position as a truck driver or to refuse a person who must read lips to a position as a telephone operator. Otherwise qualified, can only be read to mean otherwise able to function sufficiently in the position sought in spite of the handicap, if proper training and facilities are suitable and available. The major problem with the plaintiff's [Davis's] contention is that her handicap actually prevents her from safely performing in both her training program and her proposed profession.

*Id.* at 1345 [words in brackets added.]

■ Read in this light, the Supreme Court's decision in *Southeastern Communi-*

*ty College* says only that Section 504 does not require a school to provide services to a handicapped individual for a program for which the individual's handicap precludes him from ever realizing the principal benefits of the training. While such a rule obviously needs more clarification, it is clear that in this case, Camenisch's claim can succeed on the merits, despite the holding in *Southeastern Community College*, since he can obviously perform well in his profession.[12]

## II

Given our determination that Camenisch's claim succeeds on the merits, and our previous analysis of the first two factors that have to be met before a court can grant preliminary injunctive relief, we now turn to consideration of the administrative exhaustion requirement. The district court found that Camenisch did not need to exhaust HEW administrative remedies before seeking injunctive relief. Resort to such procedures, the court said, would result in "irreparable injury" to him, because the regulations contain no provisions for providing the sort of emergency relief he seeks. However, the district court, as stated earlier, required the plaintiff to file an administrative complaint with HEW; stayed further proceedings pending this final administrative determination and required Camenisch to post a $3,000 security bond. Therefore, the district court must have reasoned that the administrative exhaustion requirement was applicable to private rights of action under Section 504 filed in the courts, when no exceptions to the exhaustion doctrine were present.

■ It has been suggested here too, that even if Camenisch's claim for relief is not moot, the exhaustion issue is moot because HEW recently has issued a letter finding the University in violation of Section 504 in failing to provide educational auxiliary aids

11. *See* 45 C.F.R. § 84.44(d)(2) (1979).

12. This is consistent with the analysis of this case, undertaken in the excellent article, Note,

Defining the Rights of the Handicapped Under Section 504 of the Rehabilitation Act of 1973; Southeastern Community College v. Davis, 24 St. Louis L.J. 159 (1979).

to students with impaired sensory skills. *See* Note 3. We reject this suggestion. We cannot determine adequately both the existence and the scope of a private right of action under Section 504 in the courts without considering the extent to which that right of action is limited by an administrative exhaustion requirement. An inappropriate exhaustion requirement could so limit the existence of the private right of action we find today that it would effectively do away with our holding in Part I, that it was the Congressional intent that plaintiffs have access to the courts to enforce individual causes of action under Section 504. A decision on the existence of such a cause of action is so inextricably bound up with a decision about exhaustion, that we must also consider the exhaustion issue here. *Cf. Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).[13]

The appellant argues that no exceptions to the exhaustion doctrine were present in this case, and that the district court should have required Camenisch to exhaust his administrative remedies before granting the preliminary injunction. Camenisch argues, in opposition, that the district court decided the exhaustion issue correctly. He says that a number of exceptions to the exhaustion requirement are applicable here. First, the HEW administrative procedures contain no administrative enforcement mechanism to provide the emergency relief sought here. 45 C.F.R. § 84.61, 80.8(a) (1979); *see Barnes v. Converse College*, 436 F.Supp. 635 (D.S.C.1977). It is well-settled that where there is no adequate administrative procedure available, the exhaustion doctrine does not apply. *Bossier Parish School Board v. Lemon*, 370 F.2d 847, 852 (5th Cir. 1967), *cert. denied* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967). Second, excessive administrative delays render HEW's administrative remedies inadequate to help him and therefore a waiver of the exhaustion requirement is justified. *Walker v. Southern Railway Co.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966); *cf. White v. Mathews*, 559 F.2d 852 (2nd Cir. 1977), *cert. denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Third, there is no need to exhaust an administrative remedy where the administrative agency has waived the exhaustion requirement, which the Office of Civil Rights of HEW has done in these sorts of cases. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 765–767, 95 S.Ct. 2457, 2466–2467, 45 L.Ed.2d 522 (1975).

We find all of these arguments persuasive as to why an appropriate exhaustion requirement would have to be waived in this case. However, we disagree with the district court's apparent assumption that the HEW administrative procedures are relevant to a private individual right of action for injunctive relief under Section 504 pursued in the courts. The HEW administrative procedures do not provide the most appropriate or exclusive remedy to vindicate personal Section 504 rights. Because we find that a plaintiff is under no obligation to pursue administrative remedies in Section 504 actions, we vacate that part of the district court's order conditioning its grant of preliminary relief on the requirement that the plaintiff file an administrative complaint with HEW.[14] Since Camenisch was under no obligation to pursue these administrative procedures, there

13. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) provides an interesting analogy to this case. In *Sibron*, the Supreme Court found the appellant's criminal appeal not moot, even though he had finished serving his criminal sentence, because of the collateral consequences of a criminal conviction. In this case, if this Court were to find the exhaustion issue moot, it would have severe collateral consequences on future plaintiffs who seek to bring actions under Section 504.

14. This inquiry goes to the district court's view of the law concerning exhaustion. Since this was not part of the district court's decision as to whether the issuance of an injunction was necessary, it is not examined under the *Blackshear Residents Organization* "abuse of discretion" standard. Instead, it is examined in the way we examine trial court determinations of law.

was obviously nothing he needed to exhaust before the court could grant relief.

In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court found an implied right of action under Title IX. As stated previously, the regulations HEW has adopted to implement Section 504 adopt the Title VI enforcement procedures, 45 C.F.R. § 84.- 61 (1979), the same administrative procedures used to enforce Title IX, 45 C.F.R. § 86.71 (1979). In *Cannon*, the Supreme Court said that the complaint procedures adopted by HEW did not allow the complainant to participate in the administrative investigation or subsequent enforcement proceedings. If a violation was found, a resulting compliance agreement might not include relief for the complainant. Furthermore, the Court found that the ultimate remedy, a complete cut-off of federal funds to the institution was an inappropriate result for an individual complainant. 99 S.Ct. at 1962–63, n. 41. For all of these reasons and others, the Supreme Court concluded that private suits to enforce individual causes of action are appropriate in Title IX· cases, without resort to administrative mechanisms. The same reasoning applies here because the enforcement regulations are the same. *See Upshur v. Love*, 474 F.Supp. 332, 341 n. 23 (N.D.Cal., 1979). "[W]hile the administrative process may effectively provide, by way of the threat of a funding termination, an incentive to comply with Section 504, it provides no means by which an individual can obtain personal redress for a Section 504 violation." *Whitaker v. Board of Higher Ed. of City of New York*, 461 F.Supp. 99, 108 (E.D.N.Y., 1978).

In *Lloyd*, discussed earlier in Part I, the Seventh Circuit stated that "[t]here being no administrative remedy open to these plaintiffs, neither the exhaustion nor primary jurisdiction doctrine applies." 548 F.2d at 1287 *citing Rosado v. Wyman*, 397 U.S. 397, 405–06, 90 S.Ct. 1207, 1214–15, 25

L.Ed.2d 442 (1970). As we stated earlier, the promulgation of HEW regulations since the *Lloyd* decision has not changed the basis of that decision. The HEW administrative process does not provide the most appropriate remedy to vindicate these private causes of action.

It is clear why the Supreme Court reached the result it did in *Cannon*. The administrative enforcement process, established by Congress as a part of Title VI, centers entirely on the question of whether, in light of the policies and practices of a recipient of federal assistance, federal funds should continue to flow to that recipient. It is predicated upon the need by the Secretary to monitor and enforce the non-discrimination provisions of agreements between HEW and the recipients of federal assistance. *See* 45 C.F.R. 80.8–80.9 (1979). The purpose of the administrative framework is to provide a forum in which to initiate fund termination proceedings in the event a grant recipient fails to meet its obligations. It is not intended to provide a forum for program beneficiaries to press claims of discrimination against grant recipients. *See* 45 C.F.R. 80.8(a), 80.10(f) (1979).

The remedy that emerges from such a hearing process is not designed to aid petitioners like Camenisch at all. A decision to terminate funding of a non-complying recipient could work to the disadvantage of a complainant like Camenisch, since such a cut-off could guarantee that no further services accrue to the complaining party. There is no specific vindication of personal rights within the HEW administrative procedure for complaining parties like Camenisch.[15]

Our holding that private individual suits to enforce Section 504 rights can be brought without previous resort to administrative remedies, is entirely consistent with HEW enforcement efforts under

---

15. *See Regents of the University of California v. Bakke*, 438 U.S. 265, 419 n. 26, 98 S.Ct. 2733, 2748 n. 26, 57 L.Ed.2d 750 (1978) (concurring opinion of J. Stevens) for a similar analysis of the distinction between suits to enforce personal rights and administrative proceedings aimed at government fund termination. *See also Green Street Association v. Daley*, 373 F.2d 1. 8 ·9 (7th Cir. 1967), cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967).

the statute. The appellees have filed in this Court the affidavit of Michael Middleton, Director of the Division of Policy and Procedure in the Office of Civil Rights (OCR) in HEW, in which he says that it is OCR policy that Section 504 complainants should be allowed to file civil actions in the federal courts, without exhausting either the grievance procedures established by a recipient or HEW's own complaint procedures. We think it makes good sense and was the Congressional intent that Section 504 rights be protected by grant termination through the administrative process or by private suits to eliminate the proscribed discrimination.[16]

We therefore uphold the district court's order granting injunctive relief, but vacate that part of the order which conditioned the grant of relief on the filing of an administrative complaint with HEW. We also dissolve the stay of the action.

AFFIRMED IN PART AND VACATED IN PART.

---

**16.** *Cf. Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) in which the Supreme Court rejected the arguments of defendants who claimed that a state welfare regulation was not subject to attack in a legal suit by a private plaintiff because HEW had the power to terminate federal funding for noncompliance with federal regulations.