**Jane DOE, Plaintiff,**

v.

**NEW YORK UNIVERSITY: John Sawhill, individually and as President of New York University; Ivan Bennett, M.D., individually and as Dean of New York University School of Medicine; Jacobus Potter, individually and as Associate Dean of New York University School of Medicine; David S. Scotch, individually and as Dean of Students of New York University School of Medicine, Defendants.**

**77 Civ. 6285 (GLG).**

United States District Court,
S. D. New York.

April 9, 1981.

Christopher A. Hansen, Robert Levy, New York Civil Liberties Union, New York City, for plaintiff.

S. Andrew Schaffer, New York City, for defendants New York University et al.; Robert P. Walton, Ada Meloy, New York City, of counsel.

## MEMORANDUM DECISION

GOETTEL, District Judge.

In January of 1976, plaintiff Jane Doe, then a first-year student at the New York University Medical School ("N.Y.U."), secured a leave of absence from N.Y.U. because of various psychological problems she had been having. She subsequently received psychiatric treatment and sought readmission in 1977, maintaining that she had regained sufficient emotional stability to return to school. N.Y.U. refused to readmit her. The plaintiff then filed this action alleging that N.Y.U.'s refusal to readmit her violates section 504 of the Rehabilitation Act, 29 U.S.C. § 794.[1]

The plaintiff moved for a temporary restraining order and for a preliminary injunction. The motions were denied in an opinion issued by this Court in January of 1978. *See Doe v. New York University*, 442

---

1. Section 504 provides in pertinent part:

No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, ... be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794.

Section 504 was patterned after section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). *See* [1974] U.S. Code Cong. & Ad.News, 6373, 6390–91. The regulations promulgated to enforce section 504

expressly incorporate the procedural provisions applicable to Title VI. *See* 45 C.F.R. § 84.61 (1979); 34 C.F.R. § 104.61 (1980). (Title 45 of the C.F.R., revised as of October 1, 1979, pertains to the former Department of Health, Education and Welfare. Title 34 contains the regulations of the newly created Department of Education. Since the events in this case span the terms of both of these departments, they will be referred to collectively as HEW/Education. We will also cite both to Title 45 of the C.F.R. and to Title 34 of the C.F.R.

F.Supp. 522 (S.D.N.Y.1978) (staying the action and holding that the plaintiff must first exhaust her administrative remedies).[2]

The parties engaged in extensive discovery during the latter part of 1978 and the first half of 1979, while Jane Doe simultaneously pursued her administrative remedies with the Department of Health, Education and Welfare ("HEW") and the Department of Education ("Education").[3] In June 1979, the case was placed on the ready trial calendar, since it appeared that the parties had concluded their discovery and that no administrative agency decision had been rendered. That August, HEW issued a Letter of Findings, ruling that N.Y.U. had violated the Rehabilitation Act. Based on that opinion, the Court removed the case from the ready trial calendar and placed it on suspense to allow HEW an opportunity to resolve the matter, the plaintiff has brought this motion to restore the case to the active calendar. She has also moved to shift the burden of proof from her to the defendant.

### 1. Motion to Restore Case to Active Calendar

■ N.Y.U. asserts that it would not oppose restoring the case to the active calendar only if Jane Doe complies with certain discovery requests. In particular, it wants the plaintiff to commit herself as to who her witnesses will be and to produce four spiral notebooks, the contents and significance of which is not made very clear by the papers.

N.Y.U. has not offered any authority for the novel proposition that one party can hold an action hostage on the suspense calendar until its adversary complies with its discovery requests. Whether N.Y.U. is entitled to these discovery requests is irrelevant to whether the case should be on the suspense or active calendar. In this instance, the action was placed on suspense to afford HEW an opportunity to resolve the matter through the administrative process. Since it appears that the matter cannot be so resolved, and since there is need for a speedy trial of the action, the action will be restored to the active calendar.

### 2. Burden of Proof

■ The plaintiff argues that the burden of proof should be shifted from her to N.Y.U. because of the "adjudicatory nature" of HEW/Education's consideration of the case and because of this Court's prior ruling that the plaintiff must exhaust her administrative remedies.[4] She moves, in effect, to have this Court serve only as a "reviewing court" of an agency action, even though the provisions for judicial review under the Administrative Procedure Act ("APA") do not literally apply to the case at

2. Whether section 504 created a private cause of action and whether the complainant must exhaust his or her administrative remedies were fairly new and controversial questions of law when this opinion was issued. It is now fairly well settled that a private cause of action exists under section 504. *See Kling v. County of Los Angeles,* 633 F.2d 876, 878 (9th Cir. 1980); *N.A.A.C.P. v. Medical Center, Inc.,* 599 F.2d 1247, 1258 (3d Cir. 1979); *Leary v. Crapsey,* 566 F.2d 863, 865 (2d Cir. 1977). A conflict still remains over whether exhaustion of remedies would be required. *Compare Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1110 (N.D.Cal.1979) (exhaustion required), *with Whitaker v. Board of Higher Education of the City of New York,* 461 F.Supp. 99, 108–09 (E.D.N.Y.1978) (exhaustion not required). The most recent cases have held, however, in light of the Supreme Court's decision in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979),

that exhaustion is not required. *See Kling v. County of Los Angeles, supra,* 633 F.2d at 879; *Camenisch v. University of Texas,* 616 F.2d 127, 135 (5th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 853, 66 L.Ed.2d 797 (1980).

3. The Department of Education was created on May 9, 1980.

4. The plaintiff also moves, in the alternative, to shift the burden of going forward, which is a much different issue from shifting the burden of proof (risk of nonpersuasion). Her papers, however, do not delve into this issue. For reasons set out at the conclusion of this opinion, we have found that we cannot determine precisely what weight will be attributed to the HEW/Education findings and recommendations. Consequently, we will reserve decision until the trial on whether the HEW/Education findings satisfy the plaintiff's burden of going forward.

bar. *See* 5 U.S.C. § 701 *et seq.*[5] Jane Doe recognizes the novelty of her position[6] and concedes that there are no cases directly in support of it. She relies instead on three general areas of the law: (1) the structure of the APA, (2) the doctrines of primary jurisdiction and exhaustion of administrative remedies, and (3) the doctrines of res judicata and collateral estoppel. We need not reach these legal arguments, however, because our review of the voluminous papers thrust upon the Court by both parties lead us to reject the plaintiff's basic contention that the HEW procedures in this case were "uniquely adjudicatory." Rather, the HEW/Education procedures reflect a very thorough investigation that merits considerable weight once this case goes to trial.

Stated broadly, the administrative process included an investigation by HEW's Office of Civil Rights ("OCR"), a review of this investigation by the regional office of General Counsel, another review by the Regional Attorney, further review by the Director of Region II's Office of Civil Rights, and finally, a review of the entire record by Peggy Brodsky of the Department of Education.[7]

The materials on which HEW/Education based its decision include 1200 pages of deposition transcripts, a 100-page transcript of a psychiatric interview of Jane Doe by one of N.Y.U.'s psychiatrists, 350 pages of Jane Doe's hospital records and doctor's records, and over 100 pages of legal memoranda. In addition, five of the nine HEW/Education officials involved in the investigation attended the depositions of two N.Y.U. psychiatrists, N.Y.U.'s Dean of Students, and Jane Doe.[8]

Despite the thoroughness of their investigation, the HEW/Education procedures do not resemble an adjudicatory proceeding. An adjudicatory proceeding implies a hearing before an impartial arbiter, who, having received evidence from two or more adversaries, renders a judgment or decree. The HEW/Education investigation has none of these features.

First, Jane Doe and N.Y.U. were technically not adversaries. When a complaint is filed in such a situation, the complainant is not required to prove that she or he has been discriminated against; rather, the agency is required to conduct its own investigation to determine whether the recipient of federal assistance ("recipient") against whom the complaint was filed has complied with the Act. *See* 45 C.F.R. § 80.7 (1979); 34 C.F.R. § 100.7 (1980).[9]

Second, HEW/Education did not conduct any hearings. While Jane Doe and N.Y.U.

---

**5.** The APA provides judicial review for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Jane Doe is not adversely affected, aggrieved, or suffering from any agency action, since the HEW/Education findings were in her favor.

Moreover, only *final* agency action is reviewable. 5 U.S.C. § 704. While Jane Doe has satisfied the exhaustion requirement of this Court's January 1978 ruling, the regulations indicate that Education still has the option of initiating further proceedings either to terminate N.Y.U.'s federal financial assistance or to achieve compliance by "other means authorized by law." 34 C.F.R. § 100.8 (1980). The Litigation Report of the Chief Regional Civil Rights Attorney, dated May 16, 1980, recommends enforcement in this case and referral to the Department of Justice. Thus, the case may very well be still alive, although neither party has stated exactly what the current status of Education proceedings are today.

**6.** It is elementary that the burden of proof usually stays with the party upon whom it was originally cast. *See, e. g.,* Fed.R.Evid. 301.

**7.** The plaintiff does not state Ms. Brodsky's position at Education.

**8.** None of these five attended all four of these depositions. Moreover, there were an additional eleven depositions that were not attended by HEW/Education representatives.

**9.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") provides an analogous enforcement framework. Under Title VII, the Equal Employment Opportunity Commission ("EEOC") conducts investigations of complaints. The results of these investigations are similarly not binding adjudications and consequently are not entitled to the benefit of the "substantial evidence" or "clearly erroneous" rules of the APA. *See EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809, 813 (8th Cir. 1979); *Georator Corp. v. EEOC,* 592 F.2d 765 (4th Cir. 1979).

were invited to submit facts and legal arguments, this was done quite informally by way of letter correspondence. N.Y.U. was not offered a formal opportunity to present live witnesses and/or evidence to the HEW/Education investigators. The fact that various HEW/Education officials attended various depositions is of little consequence. These officials merely *attended* these depositions as part of their investigation; they did not officiate at them or act as hearing examiners in any way.

Third, the HEW/Education officials were *not* impartial arbiters—they were investigators. Indeed, the regulations indicate that these officials were potential *adversaries* of N.Y.U., since the regulations grant the investigating agency the right to initiate further proceedings if the agency determines that the recipient has not complied with the Act and, having made that determination, cannot resolve the matter informally. *See* 45 C.F.R. § 80.8 (1979); 34 C.F.R. § 100.8 (1980). Consequently, we find that these proceedings were not adjudicatory in nature and thus cannot have the effect of shifting the burden of proof.

Unless N.Y.U. establishes that the reports are unreliable, the HEW/Education findings and recommendations will be admissible at trial and will be entitled to considerable weight. *See generally Chandler v. Roudebush,* 425 U.S. 840, 863 n.39, 96 S.Ct. 1949, 1961 n.39, 48 L.Ed.2d 416 (1976); *United States v. School District of Ferndale, Michigan,* 577 F.2d 1339, 1354–55 (6th Cir. 1978); 4 *Weinstein's Evidence* ¶ 803(8)[03] (1979). Exactly how much weight it will be accorded is impossible to quantify at this time. Jane Doe maintains that the HEW/Education investigation was extremely thorough and warrants more than "great deference" or "great weight." N.Y.U. responds that the investigation was inept, and biased, and should be afforded little weight. Both parties raise issues of credibility, which will have to be addressed at trial. Thus, we will defer our decision as to how much weight we will accord to the HEW/Education findings and recommendations until all of the evidence regarding this matter has been heard.

Accordingly, · for the reasons set forth above, plaintiff's motion to restore the case to the active calendar is granted, and the motion to shift the burden of proof to N.Y.U. is denied.

SO ORDERED.