

# The Attorney General of Texas

October 13, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Victor H. Galloway, Ed.D.
Executive Director
Texas School for the Deaf
1102 South Congress Avenue
Austin, Texas    78764

Opinion No.  JM-78

Re:  Construction of section 5(a) of article 6687b, V.T.C.S.

Dear Mr. Galloway:

Section 5(a) of article 6687b, V.T.C.S., provides in part as follows:

> It shall be unlawful for any person to be employed to drive a motor vehicle while in use as a school bus for the transportation of pupils who has not undergone a physical examination <u>which reveals his physical and mental capabilities to safely operate a school bus.</u>  Such physical examinations shall be conducted    annually    for    each    driver, thereafter. . . .    Such  physical  and  driver's license examinations shall meet the criteria set forth in this Act.  (Emphasis added).

The Texas Education Agency (hereinafter TEA) and the Department of Public Safety (hereinafter DPS) have adopted various standards for determining whether prospective school bus drivers are physically capable of safely operating a school bus.  One standard requires a minimum hearing ability and permits the use of a hearing aid to attain that ability.  An applicant is considered to have a hearing impairment if

> [a]pplicant's hearing is not a minimum of 10/15 by whispered voice.  Hearing aid is permissible.

You have challenged the legality of this standard.  Your argument appears to be that it violates section 504 of the Rehabilitation Act of 1973.  This section states in part:

> No otherwise qualified handicapped individual in the United States. . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination  under  any  program  or  activity receiving Federal financial assistance. . . .

29 U.S.C. §794.    It is not clear from your letter whether your argument is that section 504 prohibits TEA and DPS from disqualifying any prospective school bus driver solely because he is hearing impaired, or whether it is that this particular standard is illegal. As we shall show, however, the former argument is untenable, and the latter cannot be conclusively answered in the opinion process.

Before exploring the issue of whether this standard comports with section 504, we must consider whether TEA and DPS were authorized to promulgate it.    The portion of section 5(a) of article 6687b that we reprinted above is relevant in this inquiry.    Section 4 of the same article also provides that DPS shall not issue a license, inter alia:

> 8.    To any person when in the opinion of the Department such person is afflicted with or suffering from such physical or mental disability or disease as will serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle while operating the same upon the highways. . .    provided, however, no person shall be refused a license because of any physical defect unless it be shown by common experience that such defect incapacitates him from safely operating a motor vehicle.

Section 10 of article 6687b provides that DPS:

> shall examine every applicant for an operator's, commercial operator's, or chauffeur's license, except as otherwise provided in this Section. Such examination. . .    shall include [certain tests] and such further physical and written examination as the Department finds necessary to determine the applicant's fitness to operate a motor vehicle safely upon the highways. . . . (Emphasis added).

Section 11.12 of the Education Code provides in part:

> The Central Education Agency and the State Board of Control, by and with the advice of the director of the Department of Public Safety, shall have joint and complete responsibility to adopt and enforce regulations governing the. . . operation of all school buses for the transportation of school children. . . .

Finally, section 21.171 of the Education Code provides that:

> The boards of trustees of all school districts providing transportation for pupils and all

> drivers used in that service shall abide by any
> and all regulations pertaining thereto which may
> be promulgated by the State Department of
> Education as authorized in Section 11.12 of this
> code.

In our opinion, these statutes authorize TEA and DPS to promulgate reasonable standards in addition to those set forth in article 6687b for determining whether an individual is physically capable of safely operating a school bus. These agencies may also conclude that, to be deemed capable of operating a bus, a prospective school bus driver must be able to hear at a certain minimum level. Thus, we conclude that the requirement in question is not invalid for the reason that TEA and DPS lacked statutory authority to promulgate it. We do not address the question of whether its adoption was procedurally correct. The next question is whether the requirement violates section 504.

The first case in which the United States Supreme Court dealt with section 504 was Southeastern Community College v. Davis, 442 U.S. 397 (1979). In that case, a woman who suffered from a serious hearing disability and who sought to be trained as a registered nurse was denied admission to the nursing program of Southeastern Community College, a state institution that received federal funds. An audiologist's report indicated that even with a hearing aid, the woman could not understand speech directed to her except through lipreading. The college rejected her application for admission because it concluded that her hearing disability would make it impossible for her to safely participate in the normal clinical training program or provide safe care for patients.

After being rejected, the woman filed suit in federal court alleging that the college had discriminated against her in violation of federal law. The lower court disagreed, concluding that she was not an "otherwise qualified handicapped individual" protected by section 504 and that the decision to reject her was not discriminatory within the meaning of that section. 424 F. Supp. 1341, 345 (E.D.N.C. 1976). The court of appeals, however, reversed, holding that the college had to consider the woman's application for admission without regard to her hearing ability, and that in determining whether she was "otherwise qualified," the college had to confine its inquiry to her academic and technical qualifications. 574 F.2d 1158, 1161 (4th Cir. 1978).

A unanimous Supreme Court reversed the court of appeals. In its opinion, the court made several pertinent observations regarding section 504:

> Section 504 by its terms <u>does not compel</u>
> <u>educational institutions to disregard the</u>
> <u>disabilities of handicapped individuals</u> or to make

substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an 'otherwise qualified handicapped individual' not be excluded from participation in a federally funded program 'solely by reason of his handicap,' indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context.

The court below, however, believed that the 'otherwise qualified' persons protected by [section] 504 include those who would be able to meet the requirements of a particular program in every respect except as to limitations imposed by their handicap. See 574 F.2d, at 1160. Taken literally, this holding would prevent an institution from taking into account any limitation resulting from the handicap, however disabling. It assumes, in effect, that a person need not meet legitimate physical requirements in order to be 'otherwise qualified.' We think the understanding of the District Court is closer to the plain meaning of the statutory language. An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap. (Emphasis added).

442 U.S. at 405-06. With respect to the regulations promulgated by the Department of Health, Education and Welfare to interpret section 504, see, e.g., 45 C.F.R. §§84.3-84.99, the court stated that:

A further note emphasizes that legitimate physical qualifications may be essential to participation in particular programs. We think it clear, therefore, that HEW interprets the 'other' qualifications which a handicapped person may be required to meet as including necessary physical qualification. (Emphasis added).

442 U.S. at 407. The court concluded that the college legally rejected the applicant. It found that she was not an "otherwise qualified handicapped individual" because she could not "meet all of [the college's] requirements in spite of [her] handicap." 442 U.S. at 406.

Given its reasoning in the Davis case, we think that it is abundantly clear that the Supreme Court would reject any argument that section 504 absolutely prohibits TEA and DPS from requiring that prospective school bus drivers be able to demonstrate some particular level of hearing competency. The safety of children being transported

in a school bus could be jeopardized if the hearing of the driver of that bus were impaired to such an extent that he could not hear automobile horns, sirens, the voices of the children themselves, etc. We therefore conclude that the standard in question does not, as a matter of law, violate section 504. In this connection, we note that this standard is, in certain respects, less onerous than the regulation that was upheld in Strathie v. Department of Transportation of the Commonwealth of Pennsylvania, 547 F.Supp. 1367 (E.D.Pa. 1982). There, the court rejected a challenge brought under the equal protection clause of the Fourteenth Amendment, section 1983 of the 1871 Civil Rights Act (42 U.S.C. §1983), section 504 of the Rehabilitation Act of 1973, and various state statutes, against a regulation that prohibited persons needing and wearing hearing aids from being licensed as school bus drivers, even if, with the use of the hearing aid, the person's hearing would be considered normal.

We emphasize, however, that we hold only that the standard in question does not, as a matter of law, violate section 504. To resolve completely the question of whether it comports fully with this section or with other applicable laws such as section 4(8) and 5(a) of article 6687b, we would have to resolve numerous questions of fact concerning its reasonableness, the need for it, etc. We cannot undertake such a task in the opinion process. We also emphasize that if this standard were to be found valid, it would be legally impermissible to discriminate against a prospective bus driver who satisfies the standard as well as other applicable legal requirements.

## S U M M A R Y

A standard promulgated by the Texas Education Agency and the Department of Public Safety which requires that prospective school bus drivers be able to demonstrate a reasonable level of hearing competency does not, as a matter of law, violate section 504 of the Rehabilitation Act of 1973.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

p. 333

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
David Brooks
Rick Gilpin
Jim Moellinger
Nancy Sutton